UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS J. BEATON, SR., | : |
| | : NO.: 4:07-CV-1526 |
| Plaintiffs | : |
| | : (JUDGE CONNER) |
| v. | : (MAGISTRATE JUDGE PRINCE) |
| | : |
| FRANKLIN J. TENNIS, ET AL., | : |
| | : |
| Defendants | : |
| | : |

## **REPORT AND RECOMMENDATION**

Pursuant to an Order entered on April 5, 2010 (Doc. 102), Honorable Christopher C. Conner referred the pending Motion for Summary Judgment to the undersigned for the purpose of preparing a Report and Recommendation.

## **I. Background**

Plaintiff, Thomas J. Beaton, Sr., commenced this action on August 20, 2007 (Doc.1) and thereafter filed an amended complaint on October 16, 2007 (Doc. 12) and a second amended complaint on July 17, 2008 (Doc. 41).[1] Named as Defendants to this lawsuit are Officer A. Porter, Sergeant Confer, Officer Rebar, Franklin J. Tennis, Joel Dickson, Jeffrey Rackovan, Gerald McMahon, Major

---

[1] Although initially proceeding *pro se*, Plaintiff was appointed counsel by the court by Order dated October 17, 2007 (Doc. 15).

Morris and Robert Patishnock ("Correctional Defendants").[2] The second amended complaint avers that on August 28, 2006, while incarcerated at SCI-Rockview, Plaintiff was attacked by another inmate with a padlock. It contends further, *inter alia*, that the Correctional Defendants knew or should have known of this risk of attack to Plaintiff. Accordingly, this action can be categorized as a failure to protect claim.

On January 29, 2010, Correctional Defendants filed a Motion for Summary Judgment (Doc. 83) and thereafter filed a Brief in Support (Doc. 90) and Statement of Material Facts (Doc. 91) on February 12, 2010. Plaintiff filed his Brief in Opposition to the Motion for Summary Judgment on April 6, 2010. (Doc. 103). The moving Defendants filed a Reply Brief and an additional Statement of Facts on April 16, 2010. (Docs.104-105).[3] The matter is now ripe for disposition. For the reasons stated below, the court will recommend that the motion be granted.

---

[2] Also named as Defendants were John Symons, M.D. and Valerie Senko, PA-C ("Medical Defendants"), in whose favor summary judgment was entered by Order dated February 23, 2010 (Doc. 98).

[3] Plaintiff filed a Motion for Leave to File a Counterstatement of Facts Out of Time (Doc. 106) which was denied (Doc. 110). In the absence of a Counterstatement of Facts by Plaintiff, Defendants Statements of Facts (Docs. 91,105) are deemed unopposed and adopted pursuant to Local Rules 7.8(a) and 56.1.

**II. Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the

court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. *See* Harter v. G.A.F. Corp., 967 F.2d 846,

851 (3d Cir. 1992).

## III. Factual History

Viewing the facts in a light most favorable to the Plaintiff indicates the following background to this action: While incarcerated at SCI-Rockview, Plaintiff contends that he was verbally threatened by another inmate, Sharif. (Doc. 41, ¶ 13). Defendants were never informed of these threats. (Doc. 91, ¶¶ 35-38, 49, 50, 71, 85-86, 88). On August 28, 2006, Sharif assaulted Plaintiff with a padlock. (Doc. 41, ¶¶ 8-9). Plaintiff asserts that assaults by inmates using padlocks had occurred previously at the institution. However, Defendants Patishnock, McMahon, Morris, Dickson, Rebar, Confer and Porter were unaware of previous attacks utilizing padlocks. (Doc. 91, ¶¶ 39, 54, 79). As a result of this attack, Plaintiff states that he was rendered unconscious for approximately 10-15 minutes. (Doc. 41, ¶ 15). During this time, he maintains that no prison officials responded to the assault or attended to Plaintiff's medical needs. (Id. at ¶ 16). Defendants claim that they were neither aware that Plaintiff had been attacked nor were they informed of the attack. (Doc. 91, ¶¶ 48, 68-69, 84-85). Plaintiff contends he was not taken to be examined by prison medical staff until the next day. (Doc. 41, ¶ 21).

Following the incident, Plaintiff filed a grievance, No. 165488, on October

1, 2006, asserting that prison correctional officers failed to adequately provide for his safety when he was assaulted by the other inmate. (Doc. 103-2, Ex. A)[4] Defendant Rackovan returned the grievance to Plaintiff, stating that it was untimely. On October 3, 2006, Plaintiff sent an appeal of this grievance to Defendant Tennis, who informed Plaintiff on October 4, 2006 that the matter would be investigated. (Doc. 105, Ex. J, K). Plaintiff met with Defendant Patishnock on October 16, 2006 to discuss the grievance. At that time Plaintiff signed a form withdrawing the grievance. (Doc. 105, Ex. L). Plaintiff subsequently wrote to Defendant Tennis on October 31, 2006, indicating his wish to refile the grievance. (Doc 103-2, Ex. B). Noting that the ramifications of withdrawing the grievance were fully known to Plaintiff, the request to refile was denied by Defendant Tennis. (Doc. 103-2, Ex. C). Plaintiff attempted to appeal this denial with the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") on November 6, 2006, which ultimately informed him that his appeal was dismissed. (Doc. 103-2, Ex. D-E)

**III. Discussion**

In their Motion for Summary Judgment, Defendants maintain that Plaintiff

---

[4] The Automated Inmate Grievance Tracking System indicates that Plaintiff attempted to filed four (4) grievances to final review. Only No. 165488 is presently at issue.

6

has failed to exhaust his administrative remedies with respect to his failure to protect claim. They contend further that Plaintiff has failed to establish a failure to protect claim by demonstrating that the Correctional Defendants disregarded a known risk to his health and safety.

*(A) Exhaustion*

The Prison Litigation Reform Act of 1995 declares that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 93 (2006). A prisoner must comply with the PLRA exhaustion requirement as to any claim that arises in the prison setting, regardless of the nature of the claim or of the relief sought. *See* Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d

7

65, 73 (3d Cir. 2000).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, *supra*, at 90. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter at 525).

The available remedies are found in the state's prison grievance procedures, and "compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" Jones v. Bock, 549 U.S. 199, 218 (2007). The Pennsylvania DOC has a three-stage grievance process which includes the initial review, the appeal to a facility manager, and the appeal to the Secretary's Office of Inmate Grievances and Appeals. *See* Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004). Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill at 227-32 (3d Cir.2004). A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations

8

warrant review of the claim." Gallego v. United States, No. 02-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

Defendants assert that Plaintiff's claim must fail because he failed to exhaust his administrative remedies on this matter. As stated in his pleadings, Plaintiff contends that although he initially filed a grievance on this claim, he thereafter withdrew it and later attempted to refile it. With respect to the withdrawl, Plaintiff states that he was pressured by prison officials to rescind the grievance. He further claims he did not fully understand or comprehend his decision due to his confusion resulting from the head trauma he allegedly sustained in the underlying assault. The first issue to be resolved, therefore, is whether a grievance filed and subsequently withdrawn will satisfy the exhaustion requirement when the claimant attempts to refile it by seeking further review.

Plaintiff contends that Defendant Patishnock "tricked" him into withdrawing grievance No. 165488 by putting the paperwork to withdraw it underneath a different grievance form. (Doc. 103, Ex. B). Plaintiff claims he believed that he was withdrawing a grievance relating to his housing request to be moved from one cell block to another. (Doc. 103, p.3). Affirmative misconduct by prison officials designed to impede or prevent an inmate's attempts to exhaust may render administrative remedies unavailable. *See* Todd v. Benning, 173 F.

App'x 980, 982-83 (3d Cir. 2006) (expressing approval of Eighth Circuit's holding in Miller v. Norris, 247 F.3d 736 (8th Cir.2001) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Affirmative misconduct on the part of prison officials include, for example:

> (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, *see, e.g.*, Harcum v. Shaffer, No. 06-5326, 2007 WL 4167161, at *5 (E.D. Pa. Nov. 21, 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, *see, e.g.*, Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); (3) advising an inmate that his or her situation does not require a grievance, *see, e.g.*, Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, *see, e.g.*, Camp v. Brennan, 219 F.3d 279, 280-81 (3d Cir. 2000) (finding that administrative remedies were unavailable where prison officials refused to file plaintiff's grievances regarding their coworkers).

Knauss v. Shannon, No. 08-1698, 2010 WL 569829, at *9 (M.D. Pa. February 12, 2010).

In the instant matter, Plaintiff does not assert he was pressured or threatened by Defendants or that any prison officials failed to act on or respond to the

grievance. He claims, rather, that he was "tricked" as a result of his alleged weakened mental condition. However, Defendants' submissions, uncontested by Plaintiff, include a declaration by Defendant Patishnock stating that Plaintiff indicated he did not wish to discuss the grievance but instead wanted to withdraw it. (Doc. 91, Ex. 2). Although Plaintiff argues he was attempting to withdraw a grievance regarding housing, the response to his appeal noted that the Plaintiff had already withdrawn his appeal on the housing grievance on October 10, 2006, prior to meeting with Defendant Patishnock on this grievance on October 16, 2006. Moreover, Plaintiff does not contest Defendants' assertion that he had the opportunity to review the grievance packet prior to signing the form withdrawing grievance No. 165488. Based on these facts, the court concludes that any confusion Plaintiff may have had at the time he withdrew the grievance cannot be attributed to the actions of the Defendants. Consequently, Plaintiff's withdrawl of the grievance is not a result of misconduct on the part of the Defendants. Having procedurally defaulted the issues raised in grievance No. 165488, the court concludes it is without authority to adjudicate the claims raised therein.[5]

---

[5] Further, assuming, *arguendo* that Plaintiff had not withdrawn the grievance and/or that he had pursued the matter to full exhaustion, it appears that the matter has been procedurally defaulted by Plaintiff's failure to file the grievance within 15 days of the alleged assault as required under the regulations
(continued...)

Nonetheless, the court will address the merits of his claim by conducting an analysis under the failure to protect doctrine.

### *(B) Failure to Protect*

It is well-settled that prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations omitted). Reasonable measures must be taken "to protect prisoners from violence at the hands of other prisoners." Farmer, at 833 (1994). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). In order to establish a claim under § 1983 based on the Eighth Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See* Spruill*, supra.* In this context, a failure to protect claim must demonstrate that an inmate is "incarcerated under conditions posing a substantial risk of harm," and that prison officials knew of and disregarded the excessive risk to inmate safety. Farmer, at 833, 837. Deliberate indifference is more than a mere lack of ordinary

---

[5](...continued)
governing inmate grievances.

due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Id. at 834. To constitute deliberate indifference as defined in Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "The deliberate indifference standard set out in Farmer is a high one[.]" Beers-Capitol v. Whetzel, 256 F.3d, 120 137 (3d Cir. 2001).

The instant failure to protect claim contains two separate issues: the failure to protect the Plaintiff from an assault by a fellow inmate, and the failure to protect Plaintiff, and inmates generally, from assaults with padlocks. Each of these matters will be addressed separately.

*1. Assault by an Inmate*

When an inmate seeks protection in the absence of an attack, he must demonstrate a "pervasive risk of harm" to his safety. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).

In his complaint, Plaintiff contends that he was threatened twice by an inmate identified as Sharif. Plaintiff alleges he was first threatened by Sharif

approximately two (2) months prior to the August 28, 2006 assault. (Doc. 87, Ex. 8, p. 32-33). At the time, Plaintiff was in the shower when Sharif approached him and stated "[y]ou're shower's up." Id. Following this incident, approximately one to one and one-half (1-1 ½) months before the alleged assault, Plaintiff alleges Sharif approached him on the block and stated "I'm going to fuck you up." Id. at 35. As a result of this second threat, Plaintiff maintains that he verbally requested a transfer within the prison from Defendant Patishnock. Id.

The court concludes that this factual scenario is insufficient to establish deliberate indifference on the part of the Defendants. Without more, these two statements alone do not establish a risk of pervasive harm. *See* Jones v. Beard, 145 Fed. Appx. 743 (3d Cir. 2005) (isolated comments were insufficient to show that the guards knew that inmate faced a substantial risk such that they could be considered deliberately indifferent to that risk.). As stated above, Defendants were not informed of these threats. Additionally, these two threats occurred well before the alleged assault, rendering them too attenuated from the incident to have put Defendants, had they been informed, on notice of a real and proximate threat to Plaintiff's safety. Further, the vague nature of these statements raises the question of whether they can even be characterized as menacing or intimidating. Plaintiff himself took little action with respect to the alleged threats. He did not file

14

institutional grievances complaining about Sharif's remarks prior to the attack. Moreover, although he maintains that he wanted to be transferred to other housing following the second threat, he made no written request to that effect.

If a threat is made from one inmate to another, Pennsylvania DOC policy states that both inmates are to be placed in administrative custody. (*See* Doc. 91, ¶ 51). This suggests that even if Defendants had been informed of the threats, they did not draw the inference that the threats posed a serious risk to Plaintiff necessitating transfer of both him and Sharif to administrative custody. *See, e.g.*, Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998) (noting that "threats between inmates are common" and do not, in every circumstance "serve to impute actual knowledge of a substantial risk of harm") (citations and internal quotations omitted). Thus, if they had been informed, Defendants' actions would not be classified as anything more that negligence in failing to take measures to guard against a potential assault. Such facts do not establish a claim under the Eighth Amendment. *See* Davidson v. Cannon, 474 U.S. 344, 345-48 (1986) (finding prison officials' negligent failure to heed prisoner's notification of threats from another inmate, followed by assault, is not deprivation of right); Schwartz v. County of Montgomery, 843 F. Supp. 962 (E.D. Pa. 1994), *aff'd*, 37 F.3d 1488 (3d Cir. 1994) (stating corrections officers' failure to observe institutional policies

regarding supervision of dangerous inmates constitutes negligence, which cannot support § 1983 action for violation of the Eighth or Fourteenth Amendments). Even when taken in a light most favorable to the Plaintiff, the court concludes that he has failed to raise a genuine issue of fact that he faced an excessive risk of attack by inmate Sharif to which Correctional Defendants responded with deliberate indifference.

*2. Padlocks*

The next issue to be resolved is whether the availability of padlocks to inmates constitutes a serious threat to the health and safety of other prisoners. The parties do not dispute that padlocks are available to inmates in Pennsylvania correctional facilities through the prison commissaries.

Defendants note that Defendants Patishnock, McMahon, Morris, Dickson, Confer, Porter, Rebar and Rackovan lack the authority to implement policies regarding padlocks in the prison. (Doc. 91, ¶¶ 40, 54, 61, 89). While Defendant Tennis, as Superintendent, was aware that padlocks had been used in assaults, occurring approximately 1-2 times per year, he found the issue never rose to the level to warrant the removal of padlocks from the prison. (Id. at ¶ 56). Defendant Tennis believed the history of assaults by inmates with padlocks was not of a level of frequency and/or severity to warrant their removal from the institution.

16

Defendant Tennis further observed that the use and availability of padlocks serves a legitimate purpose within the prison–to allow inmates to secure their possession, which in turn increases the safety and security of the inmates and the facility by decreasing the instances of theft and violent behavior. (Id. at ¶¶ 57-58). He opined that the misuse of padlocks was negligible compared to their valuable purpose and correct use enjoyed by a majority of the prison population. Defendant Tennis remarked further that inmates assaults utilizing bars of soap are much more common occurrences than the similar use of padlocks. (Id. at 59).

In light of the evidence, Plaintiff's submissions are inadequate to raise a genuine issue of fact that institution's policies, or those of the Pennsylvania Department of Corrections, were constitutionally inadequate. In considering whether an Eighth Amendment violation has occurred, the facts must establish a "substantial" or "pervasive" risk of harm. While recognizing that padlocks are available in the prison, their use in assaults by inmates, estimated by Defendant Tennis to be 1-2 times per year, which is consistent with Plaintiff's allegation as to the frequency of such attacks, does not represent a "pervasive" risk of harm. Moreover, an argument that the continued availability of padlocks despite knowledge of previous, albeit isolated, assaults does not constitute deliberate indifference and it fails to consider that the padlock serves a legitimate penal

17

function of securing inmates' private property while deterring theft.  *See* <u>Francisco v. Hebert</u>, No. 05-1850, 2007 WL 1805772 (W.D. La., June 21, 2007). Consequently, Plaintiff has failed to establish a cognizable claim on this issue.

**V. Recommendation**

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 83) be granted.

Date: May 10, 2010<span>       </span><u>s/ William T. Prince</u>
<span>                  </span>William T. Prince
<span>                  </span>United States Magistrate Judge